**William J. LONDON, Plaintiff,**

**v.**

**William A. HALTER, Acting Commissioner of Social Security,[1] Defendant.**

**No. 1:99–CV–257.**

United States District Court, E.D. Tennessee, at Chattanooga.

Jan. 19, 2001.

**1.** Pursuant to Fed. R. Civ. P. 25(d)(1), William A. Halter, Acting Commissioner, is substituted for Kenneth S. Apfel, former Commissioner of Social Security.

Dale Buchanan, Chattanooga, TN, for plaintiff.

Loretta S. Harber, Assist. U.S. Atty., Knoxville, TN, Mary Ann Sloan, Office of Gen. Counsel, Atlanta, Ga, for defendant.

## MEMORANDUM

EDGAR, Chief Judge.

■ United States Magistrate Judge John Y. Powers has filed his report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and FED.R.CIV.P. 72(b) concerning the amount of attorney and paralegal fees the plaintiff's counsel and legal assistants are due. (Court File No. 29). The Plaintiff has filed objections to the magistrate judge's report and recommendation. (Court File No. 30). The Court reviews the decision of the Magistrate Judge *de novo.* 28 U.S.C. § 636(b)(1)(B); FED.R.CIV.P. 72(b); *United States v. Curtis,* 237 F.3d 598, 603–04 (6th Cir.2001); *Adcock–Ladd v. Secretary of the Treasury,* 227 F.3d 343, 348 (6th Cir.2000); *Massey v. City of Ferndale,* 7 F.3d 506, 510 (6th Cir.1993).

■ The plaintiff accepts the magistrate judge's finding that $135 represents the current maximum hourly rate for reimbursable attorney fees in the Eastern District of Tennessee, under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) ("EAJA"), as adjusted for the increase in cost of living. Because the plaintiff has not objected to this finding, and after *de novo* review, the Court shall **ACCEPT and ADOPT** the magistrate judge's finding on the prevailing rate of attorney fees. The plaintiff has requested fees for 21.50 hours of attorney time, and thus shall be awarded $2,902.50 (21.50 hours @ $135.00 per hour).

■ ■ The plaintiff objects to the magistrate judge's finding that $43.20 represents the standard hourly rate for paralegal fees for Social Security cases in this district, and instead argues that $65 is the prevailing rate. The plaintiff offers two related criticisms of the $43.20 fee calculation. First, the plaintiff contends that

Judge Powers relied too heavily on the historical reimbursement rate of $40, which has been regularly awarded in this district for paralegal services since the mid–1990's. Second, the plaintiff contends that Judge Powers failed to consider other evidence in the record that purportedly suggests a higher fee. The Commissioner has not responded to the plaintiff's objections. Prior to Magistrate Judge Powers' filing the report and recommendation, however, the Commissioner submitted evidence regarding the standard fee for Social Security paralegal services in this and nearby federal judicial districts.

■ This Court has, in conducting *de novo* review of the paralegal fee award, carefully examined all the evidence in the record addressing rates for paralegal fees. Based on all of the evidence in the record as well as the Court's awareness of and experience in the Eastern District of Tennessee, the Court concludes that the prevailing local market rate for paralegal services in Social Security cases is $45 per hour. The fee award to the plaintiffs shall be **MODIFIED** to reflect this rate.

Pursuant to 28 U.S.C. § 2412(d)(2)(A), the Court must calculate an award of fees "based upon prevailing market rates for the kind and quality of the services furnished." In analyzing the similar fee award provision contained in 42 U.S.C. § 1988,[2] the Supreme Court has explained that "reasonable fees" "are in line with those prevailing in the community for similar services by [professionals] of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Accordingly, to determine an appropriate fee for paralegal services in the instant case, the Court should look to paralegal fees not only in the same geographic area but also in the pertinent area of practice.

In support of his request for an hourly paralegal fee of $65, the plaintiff has submitted two types of evidence. First, the plaintiff offers the results of a survey undertaken by Altman Weil, Inc. ("Altman Weil"), a legal consulting organization headquartered in Pennsylvania with offices in Wisconsin, California, and Great Britain. (Court File No. 25, Ex. A). This survey, *The 2000 Small Firm Economic Survey,* reports standard hourly billing rates for legal professionals across the United States. Altman Weil presents these billing rates in a series of tables, grouped according to region, firm size, and population size. According to the plaintiff, three tables are particularly relevant. First, the plaintiff points to the information for "the South," a group of nine states, including Tennessee, but also including Florida, Georgia, Virginia, and Mississippi. While the information contained in this regional grouping may provide some guidance as to paralegal fees across these state, this guidance is fairly minimal when the Court takes into consideration the socioeconomic diversity among these various states. For instance, this grouping includes such major metropolitan areas as Miami, Memphis, Atlanta, Charlotte, Tampa, Richmond, and the Virginia suburbs of Washington, DC. This grouping also includes considerably more rural areas in, for instance, Eastern North Carolina, South Alabama, and East Tennessee.

The other Altman Weil tables provide the Court with similarly limited guidance. The two tables presenting paralegal fees nationally according to firm and population

---

**2.** Fees under the EAJA differ from those under 42 U.S.C. § 1988 in that the EAJA imposes an adjustable cap on fees. *See Sorenson v. Mink,* 239 F.3d 1140, 1144–46 (9th Cir.2001) (comparing § 1988 and the EAJA).

size, while somewhat helpful, lose persuasive effect because they profile such a large and widely-divergent area. In addition to the geographic and socioeconomic diversity diminishing the authority of all three of these tables, none of the Altman Weil survey results differentiates fees based on the subject matter of the parelegals' work. Specifically, the Altman Weil data shed no light on the fees paid for paralegal services in Social Security matters. Paralegal services are not fungible. Paralegals like other professionals in the legal field tend to specialize their services particularly when employed in a firm such as that of counsel for the plaintiff, which concentrates a large portion of its work to a specific area of practice. The fact that none of the proffered Altman Weil tables distinguishes hourly fees according to practice specialization mutes their significance, especially where the Court's responsibility is to determine a reasonable fee "in line with those prevailing in the community *for similar services.*" *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (emphasis added).

This last point is equally applicable to the other evidence offered by the plaintiff in support of an hourly paralegal fee of $65. The plaintiff has submitted affidavits from two Chattanooga attorneys who suggest current fee ranges for paralegal services of $35 to $70 (Court File No. 27, Ex. D, Aff. of David Fowler) and $50 to $70 (Court File No. 27, Ex. E, Aff. of Ferber Tracy). While the Court does not doubt the familiarity of attorneys David Fowler and Ferber Tracy with characteristics of the Chattanooga legal community, the curricula vitae accompanying these attorney affidavits indicates that neither lawyer performs work on Social Security disability cases. Moreover, the law firm of which both of attorneys are members is not among the firms in the Eastern District of Tennessee handling Social Security matters. Although the estimations of these local attorneys is some evidence of the prevailing rate of paralegal fees, the fact that neither the lawyers nor their firm practices in the Social Security arena leads the Court to endow this evidence with less than controlling weight.

In comparison to the plaintiff's evidence regarding paralegal fees, the Commissioner has submitted considerable evidence which tends to support Magistrate Judge Powers' calculation of a $43.20 fee for paralegal services in Social Security cases in this district. Among the Commissioner's submissions is a motion for fees pursuant to the EAJA by Chattanooga attorney Nancy R. Preslar. (Court File No. 24, Ex. C). In this motion, Ms. Preslar, who represents plaintiffs in Social Security matters in the Eastern District, states that the ordinary hourly fee for the work of legal assistants is $45. The certificate of service accompanying this motion identifies the date as October 10, 2000.

Other evidence in the record underscores the assertion embodied in Ms. Presler's motion that $45 is an appropriate fee. The Commissioner has submitted recent slip opinions from three federal district courts in Georgia awarding fees in Social Security cases. (Court File No. 24, Exs. D, G, H). These courts compensated paralegals according to three different prevailing rates, all of which remain noticeably less than that requested by the plaintiff in the present case. According to the Northern District of Georgia at Gainesville, the prevailing rate on November 9, 1999 was $40. (Court File No. 24, Ex. H). The Rome division of the Northern District awarded paralegal fees according to a $45 hourly fee in April 2000. (Court File No. 24, Ex. G). The Middle District at Macon compensated paralegal services at a rate of $50 per hour in late September 2000. (Court File No. 24, Ex. D). Although none

of these courts was ruling on the prevailing rate for Social Security paralegal services in the Eastern District of Tennessee, the courts' fee calculations for nearby, similar communities offers some degree of context for this Court's determination. *Cf. Holden v. Bowen,* 668 F.Supp. 1042, 1048 (N.D.Ohio 1986) (following calculation of Western District of North Carolina at Charlotte in setting fee for Cleveland paralegal services).

Copies of two other motions submitted by the Commissioner underscore the context set by these slip opinions. (Court File No. 24, Exs. E–F). In these motions, Decatur, Georgia attorney Charles Martin requests attorney and paralegal fees in a Social Security matter filed in the Northern District of Georgia at Atlanta. Mr. Martin states the market value, as of September 19, 2000 for paralegal fees in the Atlanta area at $55 per hour. Atlanta, with an estimated metropolitan population of 3.7 million, WORLD ALMANAC & BOOK OF FACTS 375 (2001) (citing Bureau of the Census, U.S. Dep't of Commerce), could not reasonably be considered demographically comparable to any city in the Eastern District of Tennessee, including Knoxville and Chattanooga. Unlike Macon, Gainesville, or Rome, Atlanta is not a similar community to Chattanooga. At the same time, the Court finds it significant that Mr. Martin's representation of the market rate for paralegal fees in Atlanta is substantially lower than that requested by the plaintiff in the instant case.

The record thus suggests the following range of hourly fees for paralegal services specific to Social Security cases: $40 (Gainesville, Georgia), $45 (Rome, Georgia), $45 (Chattanooga), $50, (Macon, Georgia), $55 (Atlanta). Magistrate Judge Powers recommended a fee of $43.20 per hour, an amount which clearly falls within this range. Although the Court does not reject Judge Powers' calculation, this Court finds that adjusting this amount upward slightly would be appropriate and would result in a convenient round number. Accordingly, the Court finds that the prevailing hourly rate for paralegal services in Social Security cases in the Eastern District of Tennessee is $45. The plaintiff has requested fees for 4.30 hours of paralegal work, and thus shall be awarded $193.50 (4.30 hours @ $45.00 per hour).

An order will enter.

### ORDER

For the reasons discussed in the accompanying memorandum opinion, it is hereby **ORDERED** that the report and recommendation filed by Magistrate Judge John Y. Powers (Court File No. 29) is **ACCEPTED IN PART and MODIFIED IN PART** as follows:

(1) The recommendation of the magistrate judge that the plaintiff be awarded attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) is **ACCEPTED and ADOPTED**; and

(2) The recommendation of the magistrate judge as to the amount of the fee award is **MODIFIED**. The plaintiff is **AWARDED** fees and costs as follows:

| | | |
|---|---|---|
| Attorney Time | 21.50 hours @ $135.00 per hour | $2,902.50 |
| Paralegal Time | 4.30 hours @ $ 45.00 per hour | 193.50 |
| Service of Process | | 9.00 |
| | | $3,105.00 |

The plaintiff's objection to the magistrate judge's report and recommendation (Court File No. 30) is **DENIED,** and the plaintiff's case is **DISMISSED**. The Clerk shall close the record.

SO ORDERED.

### REPORT AND RECOMMENDATION OF JANUARY 19, 2001

POWERS, United States Magistrate Judge.

Heretofore, the Court remanded this matter to the Commissioner for further administrative consideration pursuant to sentence four of 42 U.S.C. § 405(g) (Court File Nos. 15, 16). This matter is now before the Court upon:

(1) The plaintiff's motion for an award of attorneys' fees under the Equal Access to Justice Act (EAJA) (Court File 17), with the memorandum in support thereof (Court File No. 18).

(2) The Commissioner of Social Security's response (Court File No. 24).

(3) The plaintiff's response to the Commissioner's opposition to the plaintiff's motion for attorney's fees and motion to amend EAJA fees (Court File No. 27).

(4) The Commissioner's supplemental memorandum in opposition to the plaintiff's motion for attorney's fees (Court File No. 28).

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of the plaintiff's motion for an award of attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).

### Requirements for Entitlement to EAJA Attorney Fees

In order to be entitled to EAJA attorney fees four conditions must be met:

(1) The plaintiff must be a prevailing party;

(2) The application for attorney's fees, including an itemized justification for the amount requested, must be filed within 30 days of the final judgment in the action;

(3) No special circumstances warranting denial of fees may exist; and

(4) The government's position must be without substantial justification.

### Substantial Justification

Under the Equal Access to Justice Act a court cannot award attorney fees if the position of the government was "substantially justified."

In *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490, 504 (1988) the court interpreted "substantially justified" as follows:

We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue. See ... *Trident Marine Construction, Inc. v. District Engineer,* 766 F.2d 974, 980 (6th Cir. 1985); ... to be "substantially justified" means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for government litigation of which a reasonable person would approve.[1]

---

1. *Riddle v. Secretary of Health and Human Services,* 817 F.2d 1238, *reh'g granted, vacated,* 823 F.2d 164 (6th Cir.1987) provides an insight into the history of the judicial construction of "substantially justified."

*See generally Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989); *Perket v. Secretary of Health and Human Services,* 905 F.2d 129, 132 (6th Cir.1990) and *Jankovich v. Bowen,* 868 F.2d 867, 869 (6th Cir.1989).

■ The Commissioner has the burden of proving his position was substantially justified. *Welter v. Sullivan,* 941 F.2d 674 (8th Cir.1991). The Commissioner has in his response to the plaintiff's motion stated he will not assert his position was substantially justified (Court File No. 23). The other criteria for entitlement to EAJA attorney's fees have been met. The Commissioner opposes $72.00 an hour as the hourly rate sought for the plaintiff's paralegal hours but does not oppose the $11.24 hourly increase from $125.00 to $136.24 sought as the plaintiff's attorney's hourly EAJA fee rate.

### Plaintiff's Statement

In summary, the following are sought by the plaintiff under the Equal Access To Justice Act (EAJA):

Attorney Time –21.50 hours–@136.24 per hour–$2,929.16
Paralegal Time– 4.30 hours–@ 72.00 per hour—  309.60
Service of Process ------------------------------------------  9.00
$3,247.76

## Attorneys Hourly Rate Under the EAJA

The plaintiff requests the attorney's hourly rate be increased from $125.00 to $136.24. In so doing the plaintiff asserts:

Pursuant to 28 U.S.C. § 2412(d)(2)(A) "fees and other expenses includes ... reasonable attorney fees." The statute explains that the reasonable fees

"shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."

As the language of the statute makes clear, the $125.00 per hour maximum fee can be adjusted upward for an increase in the cost of living. The $125.00 per hour maximum fee went into effect on March 29, 1996, as part of the Contract with America Advancement Act of 1996, P.L. 104–121, §§ 231–233, over four years ago.

In March 1996, the Consumer Price Index (CPI) stood at 155.7. In February 2000, the latest statistics available to the Plaintiff, the CPI stood at 169.7, a substantial increase ... Adjusted for the increased cost of living, the maximum $125.00 per hour fee should now be $136.24. The Plaintiff requests this rate for time spent on this case.

(Court File No. 18, p. 6).

The Consumer Price Index is a nationally weighted average for all urban areas in the United States. The plaintiff cites the Consumer Price Index (CPI) in February 2000 as being 169.7, and in so doing, relies upon the U.S. city average as set forth in the May 2000 Social Security Forum document for years 1970 through February 2000. That document is attached to the plaintiff's brief (Court File No. 20).

Attention is invited the two-page document entitled *Consumer Price Index for All Urban Consumers* obtained from the Internet, stats. Bls. Gov Web site, on November 20, 2000. "bls", of course is the "*Bureau of Labor Statistics* which is attached as Exhibit A." The highlighted portion of this document entitled *Consumer Price Indexes* includes the following:

| | | July 2000 | Aug. 2000 | Sep 2000 | Oct 2000 |
|---|---|---|---|---|---|
| South urban ............................... M | | R.168.0 | R168.0 | 168.5 | 168.5 |
|    Size A—More than 1,500,000 .............. M | | R.167.9 | R167.9 | 168.4 | 168.6 |
|    Size B/C—50,000 to 1,500.000 .............. M | | R.107.8 | R107.8 | 108.1 | 108.1 |
|    Size D—Nonmetropolitan (less | | | | | |
|      Than 50,000) .......................... M | | R.167.7 | R167.8 | 168.2 | 167.6 |

Subsequent to having obtained the aforesaid document from the Internet contact was had with the Bureau of Labor Statistics which resulted in the Bureau of Labor Statistics providing additional documents reflecting the South urban Size B/C Consumer Price Index for an earlier period, or period from January 1997. Attached as Exhibit B are copies of that portion of the documents faxed to us by the Bureau of Labor Statistics as to the South urban Size B/C Consumer Price Index from December 1996 through October 2000 and the Bureau of Labor Statistics fax transmittal sheet.

It is well-recognized it is far more expensive to live and/or operate a business or law firm in major metropolitan areas such as New York, Philadelphia, Atlanta, Chicago and Los Angeles than in the Eastern District of Tennessee, including the metropolitan areas of Knoxville and Chattanooga. This is factually proven by the attached Bureau of Labor Statistics documents.

While the difference in the hourly rate based upon the overall average in cities across the country as compared with the Size B/C Consumer Price Index is not that great, as the Size B/C Consumer Price Index is the proper index to be used in East Tennessee it is being used instead of the country average statistic used by the plaintiff in determining the proper increase in the hourly attorney's fee.

Use of the Size B/C January 1997 figure of 100.3 and the October 2000 figure of 108.1, and increase of 7.8, results in an hourly fee of $134.72 Accordingly, due to the closeness of $134.72 to $135.00 and to simplify calculations, the hourly rate of the EAJA attorney's fees should be increased from $125.00 per hour to $135.00.

### Paralegal's Hourly Rate Under the EAJA

While the Commissioner's response to the plaintiff's motion for EAJA attorney fees is captioned *"Defendant's Opposition To Plaintiff's Motion For Attorney Fees Pursuant to 28 U.S.C. § 2412(d)*, the only aspect of the plaintiff's EAJA motion and statement the Commissioner opposes is the $72.00 hourly rate sought for the plaintiff's paralegal time.

In the plaintiff's Memorandum in Support of Motion for EAJA Fees the plaintiff states:

In *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), the Supreme Court interpreted the fee shifting provision of 42 U.S.C. § 1988 to allow compensation for the hourly work of paralegals or law students. *Id.* 491 U.S. at 286–289, 109 S.Ct. 2470–2472. The cases interpreting the fee shifting provisions of § 1988 have been previously cited by both Plaintiff's and Defendant's counsel in this court in earlier cases, because it is very similar to the case law on EAJA fees, except that § 1988 fees are not subject to the statutory hourly cap. The reasonably hourly rate in *Missouri v. Jenkins* for attorney time was compensated at $200 per hour, *Id.* 491 U.S. at 276, 109 S.Ct. 2463. The

Supreme Court approved an hourly rate of $35 per hour for law clerks, $40 for paralegals, and $50 for recent law school graduates. *Id.*, 491 U.S. at 289, 109 S.Ct. 2463. The work performed in the case in pre-trial and trial litigation was by 1984; the cited rates be considered as evidence of the reasonable hourly rates at that time. *Id.*, 491 U.S. at 279, 109 S.Ct. 2463.

*Missouri v. Jenkins*, is also instructive in that i[t] shows that an acceptable reasonable hourly rate for paralegals is four-fifths of the hourly rate of recent law school graduates. This Court has recently held that the market rate for a law school graduate awaiting admission to the bar was $90 per hour in 1999. *Conway v. Apfel*, 3:97–cv–56 (Jordan/Murrian, E.D.Tenn. Aug. 19, 1999) ... Four-fifths of $90 is $72 per hour, which should be the current reasonable hourly rate for paralegals.

(Court File No. 18, p. 9).

It is noted in *Missouri v. Jenkins* the Court approved a fee for the experienced attorney at an hourly rate of $200.00. *Id.*, 491 U.S. at 277, 109 S.Ct. 2463. Thus, the hourly fee which the court in *Missouri* approved for paralegals, $40.00, was one-fifth of the $200 hourly fee rate which the court approved for the experienced attorney. The undersigned has previously recommended the approval of EAJA fee petitions in which experienced attorneys in the same law firm as that representing the plaintiff have been awarded compensation at an hourly rate of $125.00. One-fifth of

$125.00 is $25.00. Further, assuming *arguendo*, that the court would approve the plaintiff's current fee request based upon $136.24 per hour for experienced attorneys, one-fifth of $136.24 is $27.25. Thus, the current hourly rate of $40.00 approved by this court for paralegals is well in excess of one-fifth of the hourly rate requested by the plaintiff for experienced attorneys.

This matter has been further considered following the withdrawal of the November 30, 2000 report and recommendation. Having done so, it is concluded it will be appropriate to increase the paralegal's hourly rate in a manner consistent with the recommendation as to the increase of the attorney's hourly EAJA rate.

The recommended increase in the attorney's hourly EAJA rate is $10.00 an hour, or from $125.00 to $135.00. That recommended $10.00 hourly rate increase is an 8% increase ($10 divided by $125=0.08). Applying the 8% increase to the paralegal's $40.00 hourly rate ($40 × 0.08= $3.20), results in a recommended rate of $43.20 as the hourly rate for paralegals.

### *Conclusion*

Having carefully considered this matter, it is concluded and accordingly **RECOMMENDED**[2]:

(1) The plaintiff's motion for EAJA attorney fees (Court File No. 17) be **GRANTED.**

(2) The plaintiff be awarded fees and expenses under the EAJA as follows:

2. *Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v.* *Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive and general. Mira v. Marshall, 806 F.2d 636 (6th Cir.1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir.1987).*

Attorney Time –21.50 hours–@135.00 per hour–$2,902.50
Paralegal Time– 4.30 hours–@ 43.20 per hour–    185.76
Service of Process ---------------------------------------    9.00
                                            $3,097.26

Consumer Price Indexes

## Table 3. Consumer Price Index for All Urban Consumers (CPI-U): Selected areas, all items index

Table 3. Consumer Price Index for All Urban Consumers (CPI-U): Selected areas, all

(1982-84=100, unless otherwise noted)

All

| CPI-U | Pricing schedule (1) | July 2000 | Aug. 2000 | Sep. 2000 | Oct. 2000 |
|---|---|---|---|---|---|
| U.S. city average .......................... | M | R172.8 | R172.8 | 173.7 | 174.0 |
| Region and area size(2) | | | | | |
| Northeast urban ............................. | M | R179.8 | R179.9 | 180.7 | 181.2 |
| Size A –  More than 1,500,000 .............. | M | R180.5 | R180.8 | 181.7 | 182.1 |
| Size B/C  50,000 to 1,500,000 (3).......... | M | R108.2 | R108.0 | 108.3 | 108.8 |
| Midwest urban ................................ | M | R168.8 | R168.2 | 170.0 | 170.1 |
| Size A   – More than 1,500,000 ............. | M | R170.5 | R170.0 | 171.5 | 171.5 |
| Size B/C – 50,000 to 1,500,000 (3)......... | M | R107.7 | R107.1 | 108.6 | 108.8 |
| Size D – Nonmetropolitan  (less than     50,000) ............................... | M | R163.2 | R162.5 | 164.5 | 164.9 |
| South urban ................................. | M | R168.0 | R168.0 | 168.5 | 168.5 |
| Size A –  More than 1,500,000 ............. | M | R167.9 | R167.9 | 168.4 | 168.6 |
| Size B/C –  50,000 to 1,500,000 (3)........ | M | R107.8 | R107.8 | 108.1 | 108.1 |
| Size D – Nonmetropolitan  (less than     50,000) ............................... | M | R167.7 | R167.8 | 168.2 | 167.6 |
| West urban .................................. | M | 175.2 | R175.9 | 176.6 | 177.2 |
| Size A   – More than 1,500,000 ............. | M | R176.8 | 177.6 | 178.4 | 179.0 |
| Size B/C – 50,000 to 1,500,000 (3).......... | M | 108.1 | 108.3 | 108.8 | 109.0 |
| Size classes | | | | | |
| A (4)...................................... | M | R156.8 | R157.0 | 157.8 | 158.1 |
| B/C (3).................................... | M | R107.9 | R107.8 | 108.3 | 108.5 |
| D ......................................... | M | R167.8 | 167.6 | 168.7 | 168.7 |
| Selected local areas(5) | | | | | |
| Chicago-Gary-Kenosha, IL-IN-WI ............. | M | R174.6 | R173.7 | 174.8 | 175.4 |
| Los Angeles-Riverside-Orange County, CA ..... | M | 171.7 | 172.2 | 173.3 | 173.8 |
| New York-Northern N.J.-Long Island, | | | | | |

1 of 2

bls 3. Consumer Price Index for All U.CPI-U): Selected areas, all items index                    http://stats.bls.gov/news.release/cpi.t03.htm

| | | | | | |
|---|---|---|---|---|---|
| NY-NJ-CT-PA ............................ | M | R182.8 | R183.1 | 184.4 | 184.6 |
| Boston-Brockton-Nashua, MA-NH-ME-CT ......... | 1 | 183.2 | - | 184.3 | - |
| Cleveland-Akron, OH ......................... | 1 | R168.3 | - | 170.5 | - |
| Dallas-Fort Worth, TX ....................... | 1 | 166.2 | - | 166.9 | - |
| Washington-Baltimore, DC-MD-VA-WV (6)........ | 1 | 108.4 | - | 108.7 | - |
| Atlanta, GA ................................. | 2 | - | R172.1 | - | 171.9 |
| Detroit-Ann Arbor-Flint, MI ................. | 2 | - | R170.1 | - | 171.9 |
| Houston-Galveston-Brazoria, TX .............. | 2 | - | R154.4 | - | 157.1 |
| Miami-Fort Lauderdale, FL ................... | 2 | - | 168.4 | - | 169.6 |
| Philadelphia-Wilmington-Atlantic City, PA-NJ-DE-MD .............................. | 2 | - | R177.5 | - | 177.9 |
| San Francisco-Oakland-San Jose, CA .......... | 2 | - | 181.7 | - | 183.4 |
| Seattle-Tacoma-Bremerton, WA ................ | 2 | - | R180.3 | - | 182.1 |

1 Areas on pricing schedule 2 (see Table 10) will appear next month.
2 Regions defined as the four Census regions. See map in technical notes.
3 Indexes on a December 1996=100 base.
4 Indexes on a December 1986=100 base.
5 In addition, the following metropolitan areas are published semiannually and ap
January and July issues of the CPI Detailed Report: Anchorage, AK; Cincinnati-Hamil
CO; Honolulu, HI; Kansas City, MO-KS; Milwaukee-Racine, WI; Minneapolis-St. Paul, M
OR-WA; St. Louis, MO-IL; San Diego, CA; Tampa-St. Petersburg-Clearwater, FL.
6 Indexes on a November 1996=100 base.
- Data not available.
NOTE:  Index applies to a month as a whole, not to any specific date.

 Table of Contents

 Consumer Price Index

*Bureau of Labor Statistics*
*gibson_s@bls.gov*
*Last modified: Thursday, November 16, 2000*
*URL. /news.release/cpi.t03.htm*

Exhibit B

U.S. Department of Labor
Bureau of Labor Statistics
Washington, D.C. 20212

Consumer Price Index

All Urban Consumers - (CPI-U)

South - Size Class B/C

All items

DECEMBER 1996=100

| YEAR | JAN. | FEB. | MAR. | APR. | MAY | JUNE | JULY | AUG. | SEP. | OCT. | NOV. | DEC. | SEMIANNUAL | | | PERCENT CHANGE | |
| | | | | | | | | | | | | | 1ST HALF | 2ND HALF | AVG. | DEC-DEC | AVG-AVG |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1996 | | | | | | | | | | | | 100.0 | | | | | |
| 1997 | 100.3 | 100.6 | 100.9 | 101.1 | 101.0 | 101.3 | 101.3 | 101.4 | 101.5 | 101.8 | 101.9 | 101.3 | 100.9 | 101.5 | 101.2 | 1.3 | |
| 1998 | 101.5 | 101.6 | 101.8 | 102.0 | 102.2 | 102.3 | 102.4 | 102.5 | 102.5 | 102.8 | 102.8 | 102.8 | 101.9 | 102.6 | 102.3 | 1.5 | 1.1 |
| 1999 | 102.9 | 103.0 | 103.3 | 103.9 | 104.1 | 104.1 | 104.3 | 104.4 | 104.8 | 105.1 | 105.1 | 105.2 | 103.6 | 104.8 | 104.2 | 2.3 | 1.9 |
| 2000 | 105.4 | 106.0 | 107.0 | 107.2 | 107.2 | 107.6 | 107.8 | 107.8 | 108.1 | 108.1 | | | 106.7 | | | | |

U.S. Department of Lab

Bureau of Labor Statistics
Suite 610 - The Curtis Center
170 South Independence Mall West
Philadelphia, Pennsylvania 19106-3305

Exhibit B

**FACSIMILE TRANSMITTAL**
FROM FAX (215) 861-5720

DATE: _11/21/00_

TO: _Judge John Powers_

TELEPHONE: _423-752-5230_

OFFICE/ORGANIZATION: _____

FAX TELEPHONE NUMBER: _423-752-5103_

FROM:

Ann Freely
Economic Analysis and Information Unit
**(215) 597-3282**

NUMBER OF PAGES NOT INCLUDING THIS TRANSMITTAL SHEET: _1_

NOTES: _CPI South B/c_ _____

_____

_____

_____

## HELP YOURSELF TO BLS MATERIAL!

As part of our continuing effort to improve customer service, the Philadelphia Office offers several ways of accessing data quickly, 24 hours a day, at no charge:

-- **Fax-on-demand** is an automated system that provides a wide variety of the most requested information from the Bureau's programs, using Ready Facts -- catalog of document numbers -- for access from any touch-tone phone. Check the top of the attached material for document numbers or request a catalog. Call (215) 597-4153 and follow the voice prompts.

-- **CPI Hotlines** provide recorded messages of the U.S. and local CPI as well as faxes of CPI data, technical notes, and selected PPI data.
   Philadelphia -- (215) 656-3948
   Pittsburgh -- (412) 644-2900
   Baltimore -- (410) 962-4898

-- **Internet access** is available through the World Wide Web, as well as with FTP and Gopher. Access our page through STATS.BLS.GOV.